Walker's Appeal.

Argued September 28, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Clarence L. Shaver,* of *Shaver & Heckman,* with him *John A. Berkey,* for appellant.

*Charles H. Ealy,* of *Uhl, Ealy & Uhl,* for appellees.

490

OPINION BY MR. CHIEF JUSTICE KEPHART, December 5, 1938:

On February 22, 1935, the School Districts of Berlin Borough and Brothersvalley Township, entered into a preliminary organization (under the provisions of article XVIII, sections 1801-8 of the School Code of May 18, 1911, P. L. 309, as amended), for the establishment of a joint high school, the two districts to function separately until the proposed joint high school building was completed. While in process of erection, the Berlin Board, on May 11, 1936, elected appellant supervising principal of the public schools in that district for the school year 1936-7. On January 27, 1937, when the building neared completion, the Berlin Board notified appellant of the termination of his contract at the close of the school year. He was employed as a teacher when the Tenure Act was passed, April 6, 1937, P. L. 213, and came within its provisions unless the law determined otherwise. The Tenure Act contained definite restrictions on the heretofore absolute discretion of school directors to dismiss professional employees or terminate existing contracts which will later be discussed.

On August 16, 1937, the Boards of Berlin and Brothersvalley, at a joint meeting, formally by resolution entered into an agreement of consolidation of all the schools in the two districts. The Berlin Board on August 20, 1937, sent appellant a second notice of termination, stating that the schools of Berlin and Brothersvalley were consolidated into joint schools and the Berlin Board had no authority to employ teachers for the ensuing year for the joint board. September 3, 1937, a third notice was sent appellant reciting the causes for the termination of his contract. These reasons set forth, in addition to consolidation, that there had been a decrease of one hundred per cent in the number of pupils of Berlin District as a result thereof, and reiterated the board was without power to elect. A hearing was had at which appellant appeared. He was denied em-

ployment, and appealed from this action to the court of common pleas. Appellant also instituted proceedings in mandamus to compel the Berlin Board, his former employer, to give him a new contract. This writ being refused, and the action of the board affirmed by the court below, in one opinion, this appeal was taken from both decrees. Separate mandamus proceedings were instituted by appellant to compel the joint school board to employ him under the Tenure Act, and this writ also was refused, but no appeal from that decree has been filed.

The questions involved present what have been termed conflicting features of two important policies of the school law, namely,—the joint consolidation of schools and the teachers' tenure. The fundamental public policy, expressed in the Constitution and underlying school laws, is to obtain a better education for the children of the Commonwealth. Both policies derive their inspiration from this source, though in themselves separate, they must be considered subordinate to that cardinal purpose of making more effective our public school system as a whole.

We stated in the *Teachers' Tenure Act Cases*, 329 Pa. 213, 231, that the purpose of that act was the maintenance of an adequate and competent teaching staff, free from political or arbitrary interference, whereby capable and competent teachers might feel secure, and more efficiently perform their duty of instruction. In its sphere of operation, as there indicated, it was intended to carry out this policy.

In another sphere, as important to the public, was the legislation for the consolidation and establishment of joint schools,[1] to provide better working equipment, vocational and instructional advantages, and more adequate financial resources. Through it new departments

---

[1] Act of May 18, 1911, P. L. 309, article XVIII, sections 1804 and 1805 as amended by the Act of April 11, 1929, P. L. 497, section 8.

may be set up, new courses added to the curriculum,—advantages which the smaller abandoned schools could not have obtained acting alone. For successful operation of these joint schools it is provided that the old districts' control be transferred to a joint board, with joint though separate control in the districts. This new organization is a distinct separate legal entity from each of the district boards which make it up.[2] The board of either one of the districts is not the exclusive agency of the State to make contracts with teachers for the new joint schools, as it was for the schools of the old district. The joint board elects a president, secretary[3] and treasurer,[4] and may appoint a joint school committee to manage the joint schools.[5] Election of teachers, however, as well as establishment of new departments,[6] shall be by a majority vote of each of the separate district boards which make up a joint board.[7] Each district is powerless to act alone, nor may the joint board act on a simple majority vote of its members. Thus a teacher must be elected by a majority of the board members of each of the separate districts to become the choice of or be se-

---

[2] The separate boards are "authorized to meet jointly, and exercise the same power and authority over the same as the several boards exercise over the schools in their respective districts. . . . No joint school or department shall be established without receiving the affirmative vote of a majority of the members of the board of school directors in each district establishing the same": Act of May 18, 1911, P. L. 309, article XVIII, section 1802.

[3] Act of May 18, 1911, P. L. 309, article XVIII, section 1805.

[4] Act of May 18, 1911, P. L. 309, article XVIII, section 1804.

[5] Act of May 18, 1911, P. L. 309, article XVIII, section 1805.

[6] Footnote 2, supra.

[7] Act of May 18, 1911, P. L. 309, article XVIII, section 1804:

"The several boards of school directors of the school districts establishing such joint school or department shall meet in joint session at least once a year, for the purpose of employing the necessary teacher or teachers for such joint school or department, and fixing the salary of the same, and at such joint session they shall elect, from the treasurers of their respective districts, one who shall act as the treasurer of such joint school or department, to whom shall

lected by the joint board. When the teacher is legally elected, his contract is with the joint board, which becomes responsible for its execution.

These conclusions necessitate a fuller discussion of the status of professional employees of the separate district boards, and the new joint board, when joint schools are formed. When the Tenure Act was passed, under it appellant became a professional employee, and, it is urged, entitled to a perpetual contract, as therein provided. It is contended that the consolidation and consequent abandonment of the district schools in no way affected appellant's rights under the Tenure Act; that the Berlin Board must reëlect him since his contract with them can only be dissolved in the manner therein prescribed.[8] This section, it is stated, is all-inclusive as to what grounds may be the basis for termination of his contract.[9]

---

be paid, by the several districts establishing such joint school or department, the amount agreed upon to be contributed by each district for the support of such joint school or department and they shall fix the salary of the treasurer of such joint school or department annually, at an amount not exceeding two per centum of the funds passing through his hands: Provided, That whatever matter is required by law to be decided by a vote of the majority of all the directors of a school district shall, in a joint school or department, also be required to be decided by a majority vote of all the directors in each district."

[8] Under subsection (a) of section 2 of the act, which apparently includes dismissals as well as terminations, "The only valid causes for termination of a contract . . . shall be—Immorality, incompetency, intemperance, cruelty, wilful and persistent negligence, mental derangement, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employee, or *substantial decrease in the number of pupils or students due to natural causes.*"

[9] Section 2 of the Tenure Act requires that in all school districts, all contracts with professional employees must be in the form prescribed, and terminated in the manner therein provided. Section 6 of the same act provides that "no contract . . . shall be terminated except in accordance with the provisions of this act."

The interpretation requested by appellant would mean that the old school board must continue to hire and pay him, and other teachers in his position, for life or until retirement though there are no pupils for them to instruct. All legislation must be construed as intending to favor the public interest; when it conflicts with private interests, the public interest to be primarily served is the dominating one, not that of the individual.[10] Any other conclusion in the situation before us would result in benefit to one group of persons only, the teachers thus denied employment in the joint schools. Unless the legislature clearly intended by apt language that the school board was to be thus bound, appellant's contention must fail. The very essence of his contract, teaching, is made impossible of performance. He did not receive the majority votes of both boards, and Berlin School District has no schools in which he can teach. The legislature placed special emphasis on the method of selection of teachers for joint schools, and appellant's contract with Berlin School District, that he is now attempting to enforce, incorporates by reference this legislative provision. The legislature did not intend to confer such privileges and immunities on professional employees as the right to retain their position and pay, without employment in actual work. Furthermore, such a result would militate against forming joint schools, impeding any improvement in our educational system in this respect.

Appellant insists, however, that to give effect to the purpose of the Teachers' Tenure Act, if he cannot be employed in the schools of the Berlin District, since they no longer exist, he must be employed in the joint consolidated schools because they have absorbed the student population of that district. This would necessitate a revision of the joint school law since by its express terms

---

[10] See the Statutory Interpretation Act of May 28, 1937, P. L. 1019 at 1024, section 52(5).

the new joint board on organization must hire and contract with its teachers on the vote of the boards of both districts separately. His conclusion would not only make the employment of the teachers of the old districts mandatory on the joint board, but the Tenure Act would thus operate to annul the separate discretion specifically reserved by the Code to each of the district boards forming the joint board. It was also reserved in appellant's contract. We said, in the *Teachers' Tenure Act Cases*, 329 Pa. 213, at 228, that "The legislature, in providing by the Act of 1929 the form of contract to be executed by the teacher, expressly recognized its qualified nature by including the proviso that it *was to be subject to the provisions of the Act of 1911* 'and amendments thereto.' *And the same provision is in the Act of 1937.*" (Italics added.)

The legislature by positive language did not intend the Teachers' Tenure Act to overrule all school laws or specifically to abrogate or interfere with the provisions of the law relating to the establishment of joint schools. Though the language of the Tenure Act is apparently very broad,[11] it does not apply to the new joint schools until the initial selection of the teaching staff for such schools has been made. When new joint schools are established and their teaching staff is elected, the teachers come under the Tenure Act as securely as the teaching staff of those joint consolidated schools in existence at the time the act was passed. The two statutes stand together and effect should be given to both. (See *Brown v. Co. Comrs.*, 21 Pa. 37; *Ulrich's Case*, 267 Pa. 233, 236; *Garr v. Fuls*, 286 Pa. 137, 148; *Nyce et al. v. Board of Commissioners et al.*, 319 Pa. 353, 359). One should not

---

[11] Section 2 of the Teachers' Tenure Act, supra, makes provision for, inter alia: "In *all* school districts, *all* contracts with professional employees. . . ." Section 6 of the same act provides: *"No* contract . . . shall be terminated, except in accordance with the provisions of this act." (Italics added.)

by judicial decision be carried so far as to destroy the clear legislative public policy of the other where that policy equally favors both.

Appellant urges, in addition, if all the teachers of the two districts cannot be employed in the joint schools, a preference by length of service, under the Tenure Act, should be given to teachers of the old district schools. This might or might not be desirable, depending on the grade of excellence, competency and quality of the instructors on the staff, as compared to length of service, but this is for the legislature to determine, not the courts.

When a teacher contracts under the Tenure Act, it is subject to the provision that his contract is to be terminated if the district school in which he teaches is joined with those of another district. Such provision is a condition subsequent, which, when fulfilled, extinguishes the relation between the teacher and the board and terminates the contract. Conditions imposed by legislative acts affecting the legal relations of the parties to a contract are not uncommon and such contracts are subject thereto: *Beaver Co. B. & L. v. Winowich,* 323 Pa. 483, 489; *Commonwealth v. U. S. Fidelity & Guaranty Co.,* 314 Pa. 140; *Harrisburg Trust Co. v. Mutual Life Ins. Co.,* 278 Pa. 255. See also: *Teachers' Tenure Cases,* supra; and Williston on Contracts, section 666, 1936 ed.

Appellant knew of the provisions relating to joint consolidation, and he knew that his contract was subject thereto. He cannot now plead ignorance of them. His contract specifically refers to and provides that it is subject to the School Code and its amendments. The operative fact which extinguished the relation and caused termination of the contract was the forming of the joint schools. His contract remained in force so long as the condition subsequent was dormant. Once operative, termination was effected and notice thereof was unnecessary.

The decrees are affirmed at appellant's cost.