Jones, Appellant, *v.* Holes et al.

Submitted March 20, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*J. Reppell Moorhead* and *R. Carlyle Fee,* of *Moorhead & Fee,* for appellant.

*Peelor & Feit,* for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, May 8, 1939:
Appellant was employed by the School District as a teacher in the Cherry Tree High School for the school year 1936-37. He held a college provisional certificate issued by the Department of Public Instruction authorizing him to teach English, physical sciences and social studies in any public high school of this Commonwealth, and taught civics, American and World history. He received notice March 19, 1937, that his position in the high school was declared vacant until the enrollment for the coming school year had been fully ascertained. The notice was given more than 60 days prior to the

termination of appellant's old contract. No other reason for declaring appellant's position vacant was given, nor did the school board hold a hearing before making the declaration. The enrollment of the school district was around 200, many of whom were drawn from outside districts, always an uncertain factor.

Appellant's dismissal was due to an increased enrollment in a four-year commercial course set up in the school, with a corresponding decrease in other departments; it was not because of a decrease in pupil population within the district. The situation arose in this manner: The school board and superintendent, prior to 1934, sent out questionnaires to parents, pupils and prospective pupils in the vicinity, to determine the demand for a commercial training course in the Cherry Tree High School. The returns therefrom resulted in the installation of that department in the school starting with the first-year course, with additional studies in each successive year, until the full four-year course was taught. It was not intended to be a complete substitute for academic high school work, since pupils were not permitted to drop required subjects, but the course became increasingly popular each year and grew progressively. As the separate four-year classes filled up the vast majority of pupils dropped all but the required subjects to take up the commercial course.

The problem presented in 1937-38 was in allocating the various teachers in the fields in which they were certified to teach. It was discovered that at least three or four teachers were unnecessary to the normal operation of the academic courses due to their decreased enrollment, and that a new teacher was necessary in the commercial course. Appellant, being the most recent member of the faculty, failed to qualify under his certificate as a teacher in the commercial course, and for the above reasons his contract was not renewed. There is no dispute as to the statement of facts, nor objection to the manner in which notice was given. Proceedings

for mandamus were instituted, demanding a contract under the Tenure Act. The court below denied the writ.

There can be no question that appellant is a professional employee within the Tenure Act and that he had a valid, existing contract on the date the Tenure Act became effective. The only question is: Where there is a decrease in enrollment in various courses in a public school, so that teachers become unnecessary, but there is no decrease in the student population as a whole, is a school board obliged to employ such teachers though they have no pupils to teach? Appellant contends the court below erred in refusing the writ, because the reason for the termination of his contract was not within Section 2(a) of the Tenure Act, and did not represent a "substantial decrease in the number of pupils or students due to natural causes."[1]

Before discussing the specific provisions of the Tenure Act involved, it is well to understand the situation. The school authorities, to advance the general education of the high school students, adopted a commercial course. It was a popular course, and as a natural result of this development, the enrollment in other courses suffered. Fewer teachers were required in them, and new teachers were needed in the commercial department, but appellant could not qualify. If we sustain appellant's contention, we not only "freeze" the discretion accorded to school boards in their control over the courses of study, but stagnate development in our educational policies. School boards will not risk the establishment of new departments or courses if they must continue to employ teachers made unnecessary through such development. To avoid this risk, they must forever continue only those

---

[1] "The only valid causes for *termination* of a contract in accordance with the provisions of this section shall be—Immorality, incompentency, intemperance, cruelty, wilful and persistent negligence, mental derangement, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employee, *or substantial decrease in the number of pupils or students due to natural causes.*"

courses in which their present staff is qualified. What we said in *Ehret v. Kulpmont Borough School District,* 333 Pa. 518; is true here in the converse: "Many new fields of experimentation have been launched by our school authorities. Some have been found unsuccessful in accomplishing their purpose, and if appellee's position is upheld, no school board would risk the establishment of any new department, which in the event of failure must be continued or its idle teachers paid."

It is the administrative function of the school directors and superintendents to meet changing educational conditions through the creation of new courses, reassignment of teachers, and rearrangement of curriculum. We recently had occasion in the Ehret case, citing appropriate sections of the Act, to describe the scope of the discretion reposed in the school directors, superintendent and State Council of Education over the school policy and course of study as delegated by the legislature. The fact is clear, that it was not the intent of the Tenure Act to destroy it.[2]

---

[2] In the *Teachers' Tenure Act Cases,* 329 Pa. 213, 231; *Walker's Appeal,* 332 Pa. 488, and the Ehret case, we declared: " 'The fundamental public policy, expressed in the Constitution and underlying school laws, is to obtain a better education for the children of the Commonwealth.' The separate sections of the school code all derive their inspiration from this source. Though containing individual policies in themselves, each is subordinate to this cardinal purpose" . . . "the purpose of the Tenure Act was to maintain an adequate and competent teaching staff, free from political and personal arbitrary interference, whereby capable and competent teachers might feel secure and more efficiently perform their duty of instruction, *but it was not the intention of the legislature to confer any special privileges or immunities upon professional employees to retain permanently their position and pay regardless of a place to work and pupils to be taught; nor was it the intention of the legislature to have the Tenure Act interfere with the control of school policy and the courses of study selected by the administrative bodies;* nor was it the intention of the legislature to disrupt a school district's financial scheme, which must be operated upon a budget limited by the Code, that cannot be exceeded except in the manner provided by the legislature."

Appellant's position cannot be brought into harmony with the general purpose of the School Code; on the contrary it materially obstructs that general purpose. It would transfer much of the discretion accorded to these administrative boards to the teachers, that they might preserve their positions in perpetuity. It would impede advancement by stifling efforts to present new and varied courses to the children, and would deprive the schools of the benefit of elective courses to further the various interests of individual students. Appellant's interpretation of the Tenure Act is not within the purview of the Statutory Construction Act,[3] "that the Legislature intends to favor the public interest as against any private interest."

Considering the Code as a whole, and the broad principles of the Constitution upon which it is based, Section 2(a) of the Tenure Act may be brought into harmony therewith.[4] The provision for termination upon a natural decrease in the number of students refers generally to enrollment in a course, school, or school district. When there is a decrease of students in a course due to the establishment of another department, such a decrease is one due to natural causes, and if a teacher is thereby rendered unnecessary to the proper operation of the school his contract may be terminated. This construction has the effect of strengthening the Tenure Act, rather than of working its ultimate destruction.

If appellant's contention were adopted this section would conflict with Section 1 of the Tenure Act, amending Section 1201 of the School Code, which directs that the board of directors "shall employ the *necessary* qualified teachers." If the legislature had intended teachers to be employed or retained who are rendered unnecessary by the abolition of a department *(Ehret v. Kulpmont Borough School District,* 333 Pa. 518) ; by the join-

---

[3] Act of May 28, 1937, P. L. 1019, section 52(5).

[4] *Ehret v. Kulpmont Borough School District,* 333 Pa. 518; *Walker's Appeal,* 332 Pa. 488.

ing of schools (*Walker's Appeal*, 332 Pa. 488) ; or, as here, by a decrease in student enrollment, or "decrease in the number of pupils or students" within a course, in order to preserve the continuity and efficiency of the school system as a whole, it should have specifically set forth that intention in dealing with a subject of such importance.

Appellant's contention that Section 2(b)[5] modifies and controls the construction of Section 2(a) cannot be sustained. The subsections are distinct in subject-matter, and the difference of language indicates a difference in their construction. Section 2(b) relates solely to suspension, and not to termination.

There is no complaint or inference here that the school board acted arbitrarily from either personal or political motives, nor is there any complaint that in the assignment of instructors to the various courses, there was an unlawful subterfuge to circumvent any provisions of the Act. It is admitted that appellant's services are now not necessary for the proper conduct of the school. In the light of all the facts, as agreed upon by both parties, the board acted impersonally, nonpolitically and in the best interests of the public to give a better, more efficient and more productive education to the children of the school district.

Decree affirmed at appellant's cost.

---

[5] "Whenever it shall become necessary to decrease the number of professional employees by reason of *substantial decrease of pupil population within the school district,* the board of school directors (or board of public education) *may suspend* the necessary number of professional employees, but only in the inverse order of the appointment of such employees."