## Schwer's Appeal

*A. H. Lipez* and *A. R. Chase*, for appellant.

*M. E. Haggerty* and *Samuel H. Gilson*, for respondent.

WALKER, P. J., forty-ninth judicial district, specially presiding, October 24, 1939.—This is a proceeding under the Teachers' Tenure Act of April 6, 1937, P. L. 213, relating to one Rose Flynn Schwer, who had been employed by the School Board of the School District of the City of Lock Haven for several years as a teacher. After a hearing she was dismissed by the school board, they having found her guilty of immorality and incompetency. From this action of the school board an appeal was taken to the

Court of Common Pleas of Clinton County, and the matter then came on for hearing de novo.

After listening to the testimony and rereading the same, the court is of the opinion that in the consideration of the testimony, in the light of the charge of immorality, there is no evidence in the case to support any charge that this employe was guilty of immorality in respect to the most common popular meanings ascribed to that word, namely, that of being unprincipled, dissolute, or licentious. Her actions as disclosed by the testimony will only be considered by the court, insofar as the charge of immorality is concerned, as to indiscretion which might affect her standing in the community and insofar as it might affect her competency as a teacher.

This leaves one question for consideration, and that is whether under the law and the evidence the charge of incompetency can be sustained. The primary duty of the court is to ascertain what is the meaning of the word "incompetency" as it is used in the act of assembly. Its definition has been defined and approved in the case of Horosko v. Mount Pleasant Township School Dist. et al., 335 Pa. 369, 374, as follows:

"The term 'incompetency' has a 'common and approved usage'. The context does not limit the meaning of the word to lack of substantive knowledge of the subjects to be taught. Common and approved usage give a much wider meaning. For example, in 31 C. J., with reference to a number of supporting decisions, it is defined: 'A relative term without technical meaning. It may be employed as meaning disqualification; inability; incapacity; lack of ability, legal qualifications, or fitness to discharge the required duty.' In Black's Law Dictionary (3d edition) page 945, and in Bouvier's Law Dictionary, (3d revision) p. 1528, it is defined as 'Lack of ability or fitness to discharge the required duty.' Cases construing the word to the same effect are found in Words and Phrases, 1st series, page 3510, and 2d series, page 1013. Webster's New International Dictionary defines it as 'want of

physical, intellectual, or moral ability; insufficiency; inadequacy; specif., want of legal qualifications or fitness.' Funk & Wagnalls Standard Dictionary defines it as 'General lack of capacity of fitness, or lack of the special qualities required for a particular purpose.' "

In this same case, which is a reversal of the Superior Court by the Supreme Court and the sustaining of an action by the court of common pleas in the discharge of the teacher who had been dismissed, the court said (p. 371):

"All the members of this court agree . . . if the fact be that she 'now commands neither the respect nor the good will of the community' and if the record shows that effect to be the result of her conduct within the clause quoted, it will be conclusive evidence of incompetency. It has always been the recognized duty of the teacher to conduct himself in such way as to command the respect and good will of the community, though one result of the choice of a teacher's vocation may be to deprive him of the same freedom of action enjoyed by persons in other vocations. Educators have always regarded the example set by the teacher as of great importance, particularly in the education of the children in the lower grades such as those attending the school in which this teacher had been employed; it was a country school with eighteen pupils classifying into eight grades."

In the light of this decision by the Supreme Court, the question for the court to determine is whether or not under the evidence the actions of Rose Flynn Schwer have been such that she "now commands neither the respect nor the good will of the community", and if so, as stated by the court, it would be conclusive evidence of incompentency.

The testimony discloses that Rose Flynn Schwer was employed by the School District of the City of Lock Haven to teach in the grades for the school year beginning September 1932, when she was assigned to the Roosevelt School. At that time she lived at what was known as

the Webb Apartments, 37 East Church Street, Lock Haven, with her daughter and her sister, Agnes Flynn; that in 1933, a license to sell beer was granted to Agnes Flynn, the sister, who operated a restaurant and licensed beer parlor in this apartment house where they were residing, which license, however, was later issued to George R. Webb. When it was brought to the attention of the school authorities that she was residing at this particular place, she was notified to remove. She, however, ignored the first request, but upon a second one being made, finally in 1934 moved to Allison Township. Later she moved to the Sperring Apartment on North Fairview Street, where she resided during the years 1935 to 1937. Complaints were made, as to her conduct while living in the Sperring Apartment, to at least two individual members of the board, but were never formally brought to the attention of the board. Later complaints were received from parents relative to appellant. On March 22, 1938, due to ill health, she left school and did not return during that school year. In the fall of 1938 she reported back to school and was assigned to the Robb School. On February 14, 1939, the charges were preferred against her. The testimony further discloses that George R. Webb, who was a married man, conducted a beer parlor and apartment house, and, after appellant and her child and sister removed from the Webb Apartments, that appellant went back to the Webb Apartments, on various occasions having been seen in the bedroom of the said George R. Webb with the door open, or in some other part of the apartment, the said Webb being in an intoxicated condition. The testimony also shows that George R. Webb was a frequent visitor both at the residence occupied by them in Allison Township as well as the one in the Sperring Apartment, and that she was seen frequently in the automobile of George R. Webb, riding with him. George Webb's car was seen frequently at the Sperring Apartment at almost any hour of the night. One witness testified that he would come to the apartment and stay all night,

leaving in the morning, and sometimes he would stay until later on in the next day. That screaming by Mrs. Schwer could be heard late at night. That George R. Webb visited at the apartment occupied by her late at night and apparently had the freedom of the apartment. That on one occasion an automobile trip was taken to Canada by Mr. Webb, the appellant, and another couple. That in February 1938 George R. Webb died and one of the principal beneficiaries under his will was appellant. That in March 1938 appellant had a physical breakdown. The testimony further discloses that from November 1937 to March 1938 in the performance of the duties of the appellant there was a let-down in discipline and there was a lack of preparation for the teaching period, resulting in more or less confusion in the room. This was disclosed by the testimony of the witnesses and by a rating card dated November 15, 1937. That attempts were made by her superiors to remedy these conditions which had sprung up in the class room and in the work of appellant. In 1938, when she returned in the fall, she was placed in the Robb School and was there about two weeks when she was removed from that school on account of complaints, both written and oral, from parents and pupils, that they wanted her out of the school. This was followed by a meeting in the board room in the junior high school, which the third grade mothers and fathers attended, protesting against her as a teacher of their children. She was then transferred to the junior high school. The testimony discloses visitations by the superintendent of schools during the school term of 1937 and 1938 and he noticed a let-down in discipline and that there was disorder in the room and lack of class management. The testimony also discloses that after her transfer to the junior high school in 1938, there was disorder in the study hall in which she was in charge. The testimony discloses that in the opinion of the superintendent she was not a competent teacher between November 1937 and March 1938, as well as February and March 1939.

The court, therefore, feels that her actions were very indiscreet, and the chain of circumstances, as is developed by the testimony, coupling her name with that of a married man, would result in her being talked about by the parents and pupils, further evidenced by the complaints presented to the school board, resulting in a loss of respect and the good will of the community. The court appreciates that this conclusion will have its serious aspect so far as this professional employe is concerned, but it was her own acts and indiscretions which brought about the institution of the proceeding before the court for determination. One cannot be unmindful of the interests of the children of the schools of Lock Haven. They are not parties to the record but the court is charged with the duty of protecting their right to be instructed by teachers whose competency is not doubtful. Private interests must always be sacrificed in favor of the public interests. As was said by Chief Justice Kephart in Walker's Appeal, 332 Pa. 488, 494: "All legislation must be construed as intending to favor the public interest; when it conflicts with private interests, the public interest to be primarily served is the dominating one, not that of the individual."

It is, therefore, because we are impelled by our view of the case, the facts found, and the law as particularly outlined by the Supreme Court, that the following decree is made.

### Decree

And now, to wit, October 24, 1939, under the facts found and conclusions of law thereon, it is ordered, adjudged, and decreed that the action of the Board of School Directors of the City of Lock Haven, County of Clinton, State of Pennsylvania, dismissing Rose Flynn Schwer as a teacher in the schools of Lock Haven is affirmed, upon the grounds that the evidence shows incompetency on the part of such professional employe, the costs of these proceedings to be paid by appellant.