Frank T. Sporie, Appellant *v.* Eastern Westmoreland Area Vocational-Technical School, Appellee.

Argued May 11, 1979, before Judges MENCER, ROG-ERS and CRAIG, sitting as a panel of three.

*Bernard F. Scherer,* with him *Lightcap, McDonald & Moore,* for appellant.

*Robert J. Milie,* for appellee.

OPINION BY JUDGE MENCER, November 27, 1979:

This is a local agency appeal[1] by Frank T. Sporie (petitioner) from an order of the Court of Common Pleas of Westmoreland County affirming petitioner's suspension from his teaching duties at Eastern Westmoreland Area Vocational-Technical School (Vo-Tech) pursuant to Section 1124 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1124. We affirm.

Petitioner, a professional employee certified to teach agriculture, was suspended by the Joint Operating Committee of Vo-Tech (Committee) when Vo-Tech's agricultural program was curtailed by the

---

[1] The Local Agency Law, Act of December 2, 1968, P.L. 1133, *formerly* 53 P.S. §11301 et seq., repealed by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a) [1429]. A similar act is now found in 2 Pa. C.S. §§551-555, 751-754.

elimination of vocational agriculture in accordance with a recommended curriculum change accompanying a move to new facilities. The Committee sustained petitioner's suspension, effective August 29, 1976, after several hearings at which petitioner contested the evidence utilized by the Committee to support its decision. On appeal, the Court of Common Pleas of Westmoreland County affirmed, and this appeal followed.

We have previously held that a professional employee, as defined by Section 1101 of the Code, 24 P.S. §11-1101, may be suspended *only* for the reasons listed in Section 1124 of the Code. *See Theros v. Warwick Board of School Directors,* 42 Pa. Commonwealth Ct. 296, 401 A.2d 575 (1979); *Fatscher v. Springfield School District,* 28 Pa. Commonwealth Ct. 170, 367 A.2d 1130 (1977). *See also Alberts v. Garofalo,* 393 Pa. 212, 142 A.2d 280 (1958); *Bragg v. Swarthmore School District,* 337 Pa. 363, 11 A.2d 152 (1940). A suspension for any other reason is invalid and will result in the reinstatement of the professional employee, with back pay, even if his former position has been abolished. *See, e.g., Alberts, supra; Theros, supra.*

Here, petitioner was suspended pursuant to Section 1124(2), which reads as follows:

> Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:
>
> . . . .
>
> (2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recom-

mended by the Department of Public Instruction. . . .

Petitioner argues that the undisputed alteration in Vo-Tech's educational program did not result from the requisite "substantial decline in class or course enrollment" and therefore his suspension is invalid.

We agree with petitioner that the evidence relied on by the Board does not establish a substantial decrease in student enrollment in Agricultural Production. Yet it does provide substantial evidence to support the Committee's decision to alter the educational program at Vo-Tech "to conform with standards of organization or educational activities required by law. . . ."

In *Ehret v. Kulpmont Borough School District,* 333 Pa. 518, 5 A.2d 188 (1939), the Supreme Court sustained the suspension of a professional teacher when the school board abolished her department because of budgetary concerns. Finding that the legislature was constitutionally empowered to provide for a thorough and efficient school system[2] and that the legislature in turn mandated school boards to hire only those teachers necessary to operate the schools,[3] the Court rejected the teacher's contention that her suspension was invalid because the abolition of a department was not among the reasons for dismissing employees listed in Section 1205(a) of the School Code of 1911.[4] To rule

---

[2] Formerly Pa. Const. art. X, §1, it was amended and renumbered by Joint Resolution No. 3, May 16, 1967, P.L. 1037, and is currently found at Pa. Const. art. III, §14.

[3] Section 1201 of the School Code of 1911, Act of May 18, 1911, P.L. 309, *as amended, formerly* 24 P.S. §1121, repealed by Section 2701 of the Code, 24 P.S. §27-2701. A similar provision is now found in Section 1106 of the Code, 24 P.S. §11-1106.

[4] *As amended by* Section 2 of the Teachers' Tenure Act, Act of April 6, 1937, P.L. 213, *formerly* 24 P.S. §1126(a), repealed by Section 2701 of the Code. Similar provisions are now found in Section 1122, 24 P.S. §11-1122, and Section 1124 of the Code.

otherwise, in the Court's view, would greatly burden the taxpayers and seriously disrupt the school board's objective of providing a quality education for the children of the Commonwealth. As stated by Chief Justice KEPHART, writing for a unanimous Court:

> To sustain appellee's contention that a teacher whose department has been discontinued must be retained, and the board compelled to pay her while she is idle, would seriously handicap our educational policies. Many new fields of experimentation have been launched by our school authorities. Some have been found unsuccessful in accomplishing their purpose, and if appellee's position is upheld, no school board would risk the establishment of any new department, which in the event of failure must be continued or its idle teachers paid.

> As we have stated before, the purpose of the Tenure Act was to maintain an adequate and competent teaching staff, free from political and personal arbitrary interference, whereby capable and competent teachers might feel secure and more efficiently perform their duty of instruction, but it was not the intention of the legislature to confer any special privileges or immunities upon professional employees to retain permanently their position and pay regardless of a place to work and pupils to be taught; nor was it the intention of the legislature to have the Tenure Act interfere with the control of school policy and the courses of study selected by the administrative bodies; nor was it the intention of the legislature to disrupt a school district's financial scheme, which must be operated upon a budget limited by the Code, that cannot be exceeded except in the manner provided by the legislature. If the teacher must

be retained in the circumstances before us, the discretion of the board over its educational policies would be largely eliminated.

. . . .

When an entire department is lawfully abolished for valid reasons, which may include financial ones, in the interest of a more efficient system, the teachers in that department can be dismissed. Economy is desirable in any governmental function, and we cannot so view the present legislation as to prevent the abolition of a department for this purpose. (Footnotes omitted.)

333 Pa. at 524-25, 527-28, 5 A.2d at 191-92, 193.

*See also Jones v. Holes,* 334 Pa. 538, 6 A.2d 102 (1939); *Walker's Appeal,* 332 Pa. 488, 2 A.2d 770 (1938).

Just as the Court in *Ehret* found school boards vested with a general power, under the School Code of 1911, to suspend tenure teachers who are no longer necessary for the efficient operation of the school district because their department has been abolished, we find that school boards possess a similar power under the existing school code. By allowing the suspension of professional employees upon the alteration or curtailment of an educational program "to conform with standards of organization . . . required by law" *and* by continuing, in Section 1106 of the Code, the requirement or standard that school boards shall hire only necessary teachers, the legislature has authorized school boards to suspend professionals made unnecessary by the curtailment or alteration of a school's educational program. *Cf. Jones, supra* (a professional employee may be terminated when there has been a substantial decrease in a course's enrollment as opposed to a decrease in the district's enrollment as required by the School Code of 1911), a decision which is reflected in Section 1124(2); *Walker's Appeal, su-*

*pra* (a professional employee may be terminated upon the consolidation of school districts.), a decision which is reflected in Section 1124(3).[5]

We recognize that our holding gives school boards considerable discretion over the makeup of its curriculum and professional staff. This discretion, however, is not unlimited. A professional employee may not be suspended upon a mere finding that he is unnecessary, or else the tenure provisions of the Code would be meaningless. *See Langan v. Pittston School District*, 335 Pa. 395, 6 A.2d 772 (1939). A school board must establish by substantial evidence that the alteration or curtailment of the educational program which results in the suspension of a professional employee is motivated solely by a desire to provide a more efficient and effective school program. As stated in *Ehret*, "a department may not be abolished merely to circumvent the [tenure provisions] and to accomplish the dismissal of a teacher for political or arbitrary reasons by unlawful subterfuge." 333 Pa. at 528, 5 A.2d at 193.

Here the Committee met its burden. The Committee's decision was based on the results of surveys taken at Vo-Tech's three participating high schools. These surveys revealed that Vo-Tech's course in agriculture was generally not the first preference among high school students and that, as a consequence, anywhere from one-third to one-half of the students who began the course never finished it, most transferring to their first preference as soon as the opportunity arose. In view of this lack of holding power and Vo-Tech's testified ability to accommodate all students interested in agriculture at the agricultural program offered by one of Vo-Tech's participating high schools,

---

[5] The holding in *Walker's Appeal* was modified, in a manner not relevant here, by the Act of June 20, 1939, P.L. 482, amending Section 1205 of the School Code of 1911. *See Simpson v. South Mahoning Township School Board*, 365 Pa. 567, 76 A.2d 385 (1950).

it was reasonable for the Committee to conclude that Vo-Tech's resources could be more efficiently employed in another area of vocational study. Absent an allegation that the Board had ulterior motives, we cannot say the Committee abused its discretion in sustaining petitioner's suspension.[6]

Petitioner contends, however, that his suspension is invalid because the elimination of Agricultural Production from Vo-Tech's curriculum was never formally approved by either the Committee or the Department of Education (Department),[7] as required by Section 1124(2). A review, however, of the motions acted upon by the Committee at its September 4, 1974 meeting shows that the Committee did approve the change, even if only indirectly. As for the Department's approval, while there was a misunderstanding as to the title of the agriculture course between the Committee and the Department, in light of the fact that the Committee requested the dropping of vocational agriculture, which is a general heading for all courses pertaining to agriculture[8] and that no further

---

[6] Our holding does not conflict with either our recent decisions in *Brinser v. Cumberland-Perry Area Vocational-Technical School*, 44 Pa. Commonwealth Ct. 553, 405 A.2d 964 (1979), and *Theros, supra*, or the Supreme Court's decisions in *Alberts, supra*, and *Bragg, supra*. Although all involved the suspension of a professional employee for economy reasons and his subsequent reinstatement because he was not suspended for the reasons specified in Section 1124 of the Code, none involved a suspension because of a *curtailment or alteration of an educational program*. In each, the suspensions took place without any change or effect on the respective school districts' curricula. *Bragg* is further distinguished in that the school district failed to show that the alleged curtailment was upon the recommendation of the school superintendent or was approved by the Department of Public Instruction.

[7] The powers and duties of the Department of Public Instruction were transferred to the Department of Education by Section 1 of the Act of July 23, 1969, P.L. 181, 71 P.S. §1037.

[8] *See* Section 1801(4) of the Code, 24 P.S. §18-1801(4).

funds were received from the Department for Agricultural Production, we cannot conclude that the Department failed to approve the alteration.

Finally, petitioner argues that he received defective notice of the Committee's decision to suspend him because the Committee failed to specify its reasons for the action. A review of the Board's letter to petitioner shows this argument to be without merit.[9]

Since petitioner has not alleged a violation of Section 1125 of the Code, 24 P.S. §11-1125 (suspensions and reinstatements: how made) or that the Committee failed to comply with the holding in *Welsko v. Foster Township School District,* 383 Pa. 390, 119 A.2d 43 (1956) (where there is a reduction in the teaching staff, the board must make an effort to retain those teachers with the greatest seniority by realigning the staff so that the teachers with the greatest seniority replace those with lesser seniority rights), we will affirm.

Order affirmed.

### ORDER

AND Now, this 27th day of November, 1979, the order of the Court of Common Pleas of Westmoreland County, dated August 15, 1978, affirming the suspension of Frank T. Sporie from his teaching duties at Eastern Westmoreland Area Vocational-Technical School, is hereby affirmed.

---

[9] The Board's letter read as follows:

This is to inform you that you are suspended as Teacher of Agriculture at Eastern Westmoreland Area Vocational Technical School effective August 29, 1976, due to the Agriculture Course being dropped from the curriculum effective the end of the 1975-76 school year; and further, if you desire an opportunity to be heard by the board on this matter, please notify us in writing within ten (10) days of receipt of this letter and this hearing will be arranged.