Joseph Cadonic, Appellant *v.* Northern Area Special Purpose Schools and North Allegheny School District Appellees.

Argued November 21, 1980, before Judges WILKIN-SON, JR., BLATT and MACPHAIL, sitting as a panel of three.

*Bernard Markovitz, Markovitz and Vitti,* for appellant.

*Henry W. Ewalt, Brooks and Ewalt,* for appellee, Northern Area Special Purpose Schools.

*Alfred C. Maiello,* for appellee, North Allegheny School District.

44

OPINION BY JUDGE BLATT, February 20, 1981:

The appellant, Joseph Cadonic, brings this appeal pursuant to Sections 751-754 of the Local Agency Law, 2 Pa. C. S. §§751-754, to challenge the order of the Court of Common Pleas of Allegheny County which affirmed a decision by the Northern Area Special Purpose Schools Joint Committee suspending him from his position as a guidance counselor.

The Northern Area Special Purpose Schools (NASPS) is a jointure of nine school districts which was formed to provide the member districts with special educational programs, including vocational-technical education. In 1971, NASPS instituted a guidance consortium, funded on a year-to-year basis by federal grants, to offer guidance counselors in connection with the vocational programs, and the appellant, who was one of the seven guidance counselors hired at that time, has signed yearly contracts with NASPS ever since and is admittedly a professional employee as defined in Section 1101 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §11-1101(1). In the spring of 1977, NASPS learned that federal monies would no longer be available to fund the guidance consortium but that the member districts could receive funding themselves upon individual application, so it adopted a resolution terminating the guidance consortium after the 1977-78 school year, recommended to the individual districts that they apply for individual funding and notified the guidance counselors by letter of May 9, 1978, that their services would be terminated as of June 30, 1978.[1] On May

---

[1] It appears that all of the member districts except North Hills and appellee North Allegheny, where the appellant was assigned, applied for and received the funds, instituted their own guidance programs and hired all of the other six guidance counselors who had worked in the respective school districts.

18, 1978, the appellant requested a hearing before the NASPS Joint Committee, which was granted, and also requested a hearing before the board of the North Allegheny School District, which was denied. At the first of two hearings held before the NASPS Joint Committee on June 27 and August 24, 1978, it was stipulated that the termination was actually a suspension under Section 1124 of the School Code, 24 P.S. §11-1124, and after testimony was received NASPS upheld the suspension. An appeal was then taken to the Court of Common Pleas of Allegheny County which sustained appellee North Allegheny's motion to quash the appeal as to itself and affirmed the decision of NASPS, suspending the appellant.

Our scope of review where, as here, the lower court took no additional evidence, is to determine whether or not the necessary findings of fact made by NASPS are supported by substantial evidence, there was a manifest abuse of discretion or error of law by NASPS or there was a violation of the appellant's constitutional rights. *Acitelli v. Westmont Hilltop School District,* 15 Pa. Commonwealth Ct. 214, 325 A.2d 490 (1974).

We have previously held, of course, that the suspension of a professional public school employee can be upheld *only* if it conforms to the requirements of Section 1124 of the School Code, 24 P.S. §11-1124, which provides:

Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

(1) Substantial decrease in pupil enrollment in the school district;

(2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of

school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;

(3) Consolidation of schools, whether within a single district, through a merger of districts, or as a result of joint board agreements, when such consolidation makes it unnecessary to retain the full staff of professional employes;

(4) When new school districts are established as the result of reorganization of school districts pursuant to Article II., subdivision (i) of this act, and when such reorganization makes it unnecessary to retain the full staff of professional employes.

See, e.g., Theros v. Warwick Board of School Directors, 42 Pa. Commonwealth Ct. 296, 401 A.2d 575 (1979). The appellant contends, and we must agree, that the suspension here cannot be justified under paragraphs (1), (3) and (4) of Section 1124, and he also argues that, even if the elimination of the guidance consortium qualifies as a "curtailment or alteration of the educational program" under paragraph (2), the suspension is nevertheless invalid in that the other specifications of that paragraph were not fulfilled: i.e., there was no recommendation by the superintendent, concurrence by the school directors, approval by the Department of Public Instruction, decline in class enrollments or requirement of law.

We must affirm NASPS' decision if we find that substantial evidence exists to support the findings of fact necessary to meet the requirements of Section 1124. And we believe that there can be no question

that the elimination of the guidance consortium was the "curtailment or alteration of [an] educational program", for there was specific testimony in the record to support the finding of NASPS that the superintendent recommended the abolition of the program. Although the board of directors of NASPS did not formally concur in the elimination of the guidance consortium, the record establishes that the Joint Committee of NASPS, which is comprised of the school boards of the member districts and has ultimate authority over the NASPS board of directors, approved the plan. And we believe that such indirect concurrence is sufficient for purposes of showing compliance with Section 1124. *See Sporie v. Eastern Westmoreland Area Vocational-Technical School,* 47 Pa. Commonwealth Ct. 390, 408 A.2d 888 (1979). NASPS found that the elimination of the guidance consortium was approved by the Department of Education[2] by letter dated July 10, 1978,[3] and we must hold that, even though such approval was not obtained until after the first and before the second hearing, Section 1124 was satisfied in that approval by the Department was obtained and placed into evidence prior to the close of the hearing. It is, therefore, sufficient to support the decision made.

It is true that the curtailment of the guidance consortium did not result from a decline in class enroll-

---

[2] The Department of Education succeeded to the duties and powers of the Department of Public Instruction pursuant to Section 1 of the Act of July 23, 1969, P.L. 181, 71 P.S. §1037.

[3] Although this letter was objected to as hearsay, we find that such a document representing official action by the Department of Education has such relevance and probative value as to be properly considered by NASPS under the provisions of Section 554 of the Local Agency Law, 2 Pa. C. S. §554, which states in pertinent part that "[l]ocal agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received."

ment, but we find that the elimination of this program, like that in *Sporie v. Eastern Westmoreland Area Vocational-Technical School, supra,* was meant "to conform with standards of organization or educational activities required by law" and, therefore, fulfills the mandates of Section 1124. In *Sporie,* professional employees were suspended after vocational agriculture courses were dropped from the school's curriculum and this Court, relying heavily upon the Supreme Court case of *Ehret v. Kulpmont Borough School District,* 333 Pa. 518, 5 A.2d 188 (1939), upheld the suspensions.

> Just as the Court in Ehret found school boards vested with a general power, under the School Code of 1911, to suspend tenure teachers who are no longer necessary for the efficient operation of the school district because their department has been abolished, we find that school boards possess a similar power under the existing school code. By allowing the suspension of professional employees upon the alteration or curtailment of an educational program 'to coform with standards of organization . . . required by law' *and* by continuing a Section 1106 of the Code [24 P.S. §11-1106], the requirement or standard that school boards shall hire only necessary teachers, the legislature has authorized school boards to suspend professionals made unnecessary by the curtailment or alteration of a school's educational program. (Emphasis in original.)

*Sporie v. Eastern Westmoreland Area Vocational-Technical School, supra* at 395, 408 A.2d at 891. *Sporie* placed the burden on the school board to prove that the suspension was based *solely* on a desire to provide a more efficient and effective school system and we must conclude that NASPS has met that bur-

den inasmuch as the uncontradicted evidence establishes that the appellant's suspension resulted *entirely* from NASPS' inability to obtain federal funding despite all its efforts to do so and there was no evidence of an ulterior motive to circumvent the teacher tenure provisions of the School Code. Moreover, this case involves the curtailment of an educational program through the elimination of an entire guidance service and the suspension of all the counselors therein and is, therefore, distinguishable from such cases as *Brinser v. Joint-Operating Committee,* 44 Pa. Commonwealth Ct. 554, 405 A.2d 964 (1979) and *Theros v. Warwick Board of School Directors, supra,* where only one position was eliminated and only one teacher suspended. Thus, after an examination of the record and of the applicable law, we must conclude, that there is substantial evidence to support NASPS' suspension of the appellant under Section 1124(2) of the School Code.

The appellant further raises the constitutional argument that he was denied due process in that the solicitor for NASPS served as the neutral party responsible for ruling on the objections which arose at his hearing. We must reject this argument and note that NASPS employed an independent attorney to present the case in favor of the suspension and that the record evidences no intermingling of the judicial and prosecutorial roles. *See Smith v. Richland School District,* 36 Pa. Commonwealth Ct. 150, 387 A.2d 974 (1978).

Finally, the appellant attacks his suspension on the grounds that Section 1125(b) of the School Code, 24 P.S. §11-1125, requires that NASPS should have suspended teachers with lesser seniority before suspending him. *Welsko v. Foster Township School District,* 383 Pa. 390, 119 A.2d 43 (1956). We must agree with the lower court, however, that Section 1125 was

not violated, for the evidence demonstrates that NASPS sought to realign its staff to accommodate the appellant but that no position existed for which he was certified or qualified. *See Smith v. Harmony Area School District*, 16 Pa. Commonwealth Ct. 175, 328 A.2d 883 (1974).

We must also affirm the lower court's decision to quash the appeal as to North Allegheny School District. North Allegheny was never included as a party in the hearing before the NASPS Joint Committee and was afforded no opportunity there to defend itself.[4] *Cf. Thwing v. Otto-Eldred School District*, 23 Pa. Commonwealth Ct. 32, 350 A.2d 892 (1976) (where the appellant was held to be a proper party to the appeal because she had been notified of the hearing and had an opportunity to participate therein).

ORDER

AND Now, this 20th day of February, 1981, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

---

[4] We would note that the proper recourse against North Allegheny would have been for the appellant to appeal independently North Allegheny's refusal of his May 18, 1978, request for a hearing in regard to his suspension.