558 A.2d 116

McKeesport Area School District, Appellant *v.* William Cicogna, Appellee.

Argued February 6, 1989, before Judges CRAIG and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Karen L. Myers,* with her, *Robert P. Costello,* for appellant.

*Ronald N. Watzman, Litman, Litman, Harris, Brown & Watzman, P.C.,* for appellee.

OPINION BY JUDGE CRAIG, April 13, 1989:

A period of declining school enrollment, and the resulting reduction in professional teacher employment, produces stresses for the school districts and teachers involved, and also generates difficult legal issues of the sort involved in this case.

The McKeesport Area School District has appealed from an order by Judge DOYLE of the Common Pleas Court of Allegheny County which directed the district to reinstate furloughed teacher William Cicogna, with back-pay.

The questions are:

1. Was Mr. Cicogna's suspension a result of the substantial decrease in pupil enrollment in the school district, or did his suspension result from the school district's action in allowing another teacher to delete one of the areas of her certification?

2. If the suspension resulted from the latter cause, does the school board's authorization to delete one subject matter area from another teacher's certification constitute a valid basis for suspension under the law?

Section 1124 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1124, authorizes the suspension of professional employees as follows:

> Any board of school directors may suspend the necessary number of professional employees, for any of the causes hereinafter enumerated:
>
> (1) Substantial decrease in pupil enrollment in the school district;
>
> (2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;
>
> (3) Consolidation of schools . . . ;
>
> (4) When new school districts are established as a result of reorganization . . . .

The findings of fact adopted by the McKeesport Area School Board, after a hearing, recite the basic facts, as follows:

3. Between September, 1983 and June, 1984 the McKeesport Area School District realized a decline in enrollment as that term is defined by the Collective Bargaining Agreement of 176 students. (N.T. 11, 18; District Exhibit 1).

4. During the 1983-84 school year there were 62 students enrolled in the cooperative education program. For the 1984-85 school year there were 27 students enrolled in that program or a reduction of 45 [sic] students. (N.T. 12).

5. As a result of the decline in enrollment experienced during the 1983-84 school year, the Board of School Directors of the McKeesport Area School District furloughed six employes at its regular meeting held June 11, 1984. (N.T. 18, 20; Cicogna Exhibit 2).

. . . .

7. William Cicogna is certified in the area of Accounting only and taught in the business education department of the McKeesport Area School District. (N.T. 14; District Exhibit B).

8. William Cicogna is less senior than any other employe in the business education department who is currently working. (District Exhibit C).

9. As a result of the overall decline in enrollment and the reduction of students in cooperative education, the McKeesport Area School District reduced the number of employes in cooperative education from two to one for the 1984-85 school year. (N.T. 14).

10. Angelo Permigiani, who is more senior than William Cicogna remained as the District's only cooperative education teacher. Vivian Gessner, who is also more senior than William Cicogna

moved from cooperative education to business education for which she was also certified thereby bumping William Cicogna. (N.T. 14-15; District Exhibit B).

11. By June, 1984, Vivian Gessner had removed social studies from her professional certificate. (N.T. 13; Joint Exhibit 1 [professional certificate of Vivian Gessner submitted after the close of the testimony]).

12. Had Vivian Gessner not removed social studies from her professional certificate, a realignment was possible whereby William Cicogna would not have been furloughed. (N.T. 28-30).

An additional finding of fact, No. 6, represents the board's answer to the first question stated above. That finding reads as follows:

6. Also as a result of the decline in enrollment experienced during the 1983-84 school year, the Board of School Directors of the McKeesport Area School District furloughed William Cicogna at a special meeting held August 22, 1984. (N.T. 28).

Accordingly, this court's analysis must begin with determining whether substantial evidence of record supports that finding.

The board claims to have effectuated the reduction in force in two steps, by furloughing six employees in June of 1984 and a seventh (Mr. Cicogna) in August of 1984. However, because the suspension of Mr. Cicogna in August was offset by the reinstatement of teacher Garey Christian at that time, there appears to be no dispute as to the fact that the total number of suspensions warranted by the enrollment decline was six, rather than seven.

There is also no dispute that this school district uses a system of checkerboard realignments when teachers are

furloughed. A district witness agreed to a definition of such checkerboarding as follows:

> When there are layoffs to be made, the School District Administration and School Board will assign teachers to various areas of their certification so as to lay off the least senior employee possible under the circumstances . . . .

That approach is in accordance with section 1125.1 of the Public School Code, 24 P.S. §11-1125.1, which, in pertinent part, reads:

> (a) Professional employees shall be suspended under section 1124 (relating to causes for suspension) in inverse order of seniority within the school entity of current employment . . . .
>
> . . . .
>
> (c) A school entity shall realign its professional staff so as to insure that more senior employees are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employees.

As noted in the board's findings, the board furloughed six employees on June 11, 1984 (FF 5). There remained the reduction of the number of employees in cooperative education, from two to one, to be carried out (FF 9). With teacher Permigiani, more senior than Mr. Cicogna, remaining as the only cooperative education teacher, teacher Vivian Gessner moved from cooperative education to business education and thereby displaced the less senior Mr. Cicogna from business education, the only field in which he is certified (FF 10).

However, the board concurrently, in June, had authorized teacher Gessner to delete social studies from her certification. According to an assistant superintendent's testimony, she had been tentatively assigned to teach

social studies for the 1984-85 school year (R 23a). However, after the board had concurrently authorized the deletion of social studies from her certificate, the board reassigned Vivian Gessner to business. Another teacher, Mr. Gladkowski, who was certified in both social studies and physical education, was then reassigned from physical education to replace her in social studies. The end result was that teacher Garey Christian, a physical education teacher laid off in a previous year, was then recalled to teach physical education. Mr. Christian had less seniority than Mr. Cicogna.

As the assistant superintendent acknowledged, the deletion of social studies from teacher Gessner's certificate was crucial in bringing about the furlough of Mr. Cicogna and the reinstatement of the furloughed Mr. Christian, who has less seniority than Mr. Cicogna. The assistant superintendent testified as follows:

> Q: If Gessner would have taught social studies, Cicogna would not have been laid off, is that correct?
>
> A: That's correct.

Board Finding No. 12, quoted above, supports that point.

As noted above, the fact that the furlough of Mr. Cicogna was paralleled by the reinstatement of Mr. Christian confirms that the decline in enrollment warranted the suspension of a total of six teachers—those suspended in June—rather than seven. In other words, the August suspension of Mr. Cicogna cannot be regarded as a seventh furlough for declining enrollment reasons because Mr. Christian's reinstatement meant that the August moves produced no net reduction in the professional faculty. Accordingly, the record does not support the board's Finding of Fact No. 6, as literally stated.

If there is no evidence to confirm a finding that Cicogna's furlough was directly related to a decline in enrollment, can Mr. Cicogna's furlough be said to have resulted from realignment effectuated after the June reduction in order to assure the retention of professional employees with greater seniority? That question must be answered negatively, because the record confirms that the decisive factor in the Cicogna furlough was not realignment of the faculty on the basis of their prospective 1984-85 teaching assignments, but as a consequence of a further realignment which resulted from the certification deletion allowed to teacher Gessner.

Therefore, the answer to the first question stated above is that the certification deletion was the cause of the questioned furlough.

Hence, we must proceed to the second and final question: Is the furlough of one teacher, as a consequence of a certification deletion by another teacher, warranted when the result is to reemploy a less senior third teacher, in preference to the teacher furloughed.

This court's scrutiny of the Public School Code has led to the conclusion that displacement of one teacher because of a certification revision of another teacher is not authorized by the statutory warrant as to suspensions. In *Hixson v. Greater Latrobe School District*, 52 Pa. Commonwealth Ct. 92, 421 A.2d 474 (1980), this court, after enumerating the four reasons authorizing suspension (enrollment decrease, program curtailment, school consolidation, school reorganization) as quoted above, stated:

> The enumerated reasons are the exclusive basis on which a suspension of a professional employee may be made. Sporie v. Eastern Westmoreland Area Vocational Technical School, 47 Pa. Commonwealth Ct. 390, 408 A.2d 888 (1979). A suspension on any other basis is invalid.

52 Pa. Commonwealth Ct. at 95, 421 A.2d at 476.

The history of the *Hixson* case, which also involved displacement as a consequence of certification change, differs in the time span covered, but not in essential nature, from the history of this case. There the Greater Latrobe School District suspended thirteen teachers in June of 1977 as a consequence of a decline in pupil enrollment. After teacher Hixson continued to work as an industrial arts teacher during the succeeding 1977-78 school year, another teacher, certified both in industrial arts and social studies, continued to teach during 1977-78 in social studies, but was then allowed by the board to delete his social studies certification, with the consequence that his reassignment to the industrial arts department resulted in the displacement of Mr. Hixson in June of 1978.

Although the lapse of time between the faculty reduction and the ultimate displacement of the complainant, as a result of the decertification consent, was greater in *Hixson* than here, and although the decertification in the *Hixson* case followed active service in the social studies field, while teacher Gessner's actual social studies teaching service had been nonexistent in this case, there remains the inescapable point that the district here had accomplished the six-teacher reduction in force independently of the subsequent reshuffling which eliminated Mr. Cicogna and replaced him with a teacher junior to him, thus effecting no further net reduction in force.

The inescapable conclusion is that the Public School Code does not authorize a school board to give consent to a certification change—unrelated to enrollment decline—which operates to eliminate a teacher in favor of one junior in seniority to the teacher displaced.

Aside from a certification change that requires, and receives, school board consent, as occurred here, a state regulation, 22 Pa. Code §49.69, authorizes a teacher to

delete certification with respect to an area in which the teacher has been inactive for ten years, *without* local school board authority but provided that the teacher requests the deletion between October 1 and December 31. In addition, the same regulation provides that

> (c) A moratorium for requesting certification dele-
> tion shall exist from January 1 through September
> 30 of each year to allow schools the opportunity to
> plan for the assignment of their certified staffs in
> the ensuing school year.

The fact that automatic deletion of unused certification areas is authorized only in the middle of a school year, taken together with the requirement for school board consent at other times, suggests strongly that constraints apply to certification deletions in the course of realignments during the summer period between school years, as in this case.

Accordingly, analysis of the facts shows that the realignment which displaced Mr. Cicogna did not contribute to the faculty reduction because of declining enrollment but instead resulted from another teacher's certification revision, which the Code does not authorize as a cause for a teacher's suspension.

Therefore, the decision of Judge DOYLE and the trial court is sound and will be affirmed.

### ORDER

NOW, April 13, 1989, the order of the Court of Common Pleas of Allegheny County at No. S.A. 1032 of 1985, dated December 10, 1987, is affirmed.

---

DISSENTING OPINION BY JUDGE PALLADINO:

I respectfully dissent. The majority opinion incorrectly concludes that Cicogna's furlough for the 1984-85 school year was not directly related to the decline in

enrollment experienced by the McKeesport Area School District during the 1983-84 school year.

The enrollment decline caused the school district to eliminate six teaching positions. In deciding which teachers to furlough as a result of this decline, the board realigned the teaching staff based on seniority and certification. In June of 1984, the board notified those teachers who would be furloughed because of this realignment.

As a result of the realignment, Vivian Gessner was assigned to teach social studies, one of her areas of certification. Gessner had not taught social studies in 37 years and did not believe she was competent to do so. Gessner informed the board of this and promptly sought approval from the board, as required by 22 Pa. Code §49.69, to have social studies deleted from her teaching certificate. The board approved her request. The Secretary of Education deleted social studies from Gessner's teaching certificate.

The deletion of social studies from Gessner's teaching certificate necessitated Gessner's reassignment to another subject, resulted in one of the teachers furloughed in June being notified that he would not be furloughed, and caused the board to furlough Cicogna. All of this was done *prior* to the start of the 1984-85 school year.

Section 1125.1(c) of the Public School Code requires that when a decline in school enrollment necessitates the elimination of teaching positions, the realignment of teachers must be done by affording the most senior teachers the opportunity to fill the positions for which they are certified. Realignments due to declining enrollment are done between school years. The resulting furloughs are effective *at the beginning of the next school year*. Certainly the legislature did not intend section 1125.1 to be used to force a teacher to teach a subject she had not taught in 37 years and did not believe she was

competent to teach. It was possible to avoid such a calamity *prior to the start* of the 1984-85 school year, which was the effective date of the furloughs necessitated by the enrollment decline.

This case is clearly distinguishable from *Hixson v. Greater Latrobe School District*, 52 Pa. Commonwealth Ct. 92, 421 A.2d 474 (1980), because there the board's approval of a certification deletion occurred one year *after* the school district had permissibly furloughed teachers. Here the certification deletion was approved and Cicogna was furloughed *prior* to the effective date of any of the furloughs resulting from the declining enrollment. Cicogna's furlough clearly resulted from the enrollment decline.

Accordingly, the trial court's decision should be reversed.