## Ehret *v.* Kulpmont Borough School District, Appellant.

Argued December 6, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

520

*John L. Pipa, Jr.,* for appellant.

*J. A. Welsh,* for appellee.

Opinion by Mr. Chief Justice Kephart, March 22, 1939:

The School District of Kulpmont Borough appeals from an order of the court below directing that appellee be reinstated as a professional employee of the district. She was first dismissed by the board in 1937, for the reason that she was a nonresident. As she had a contract when the Teachers' Tenure Act of April 6, 1937, P. L. 213, went into effect, the court of common pleas ordered her reinstated. Thereafter she was assigned to teach the kindergarten, and taught until the end of the school year 1938, when the board discontinued the kindergarten entirely, and having no place for appellee, suspended her until the department should be reëstablished.

Prior to the discontinuance of this department, the board found the school district in difficulties, and requested the Department of Public Instruction, through the Chief of School Business, to investigate the adequacy of the district's instructional staff, administrative personnel and instructional efficiency. The report was finished May 13, 1938, but it is not clear from the record when the board had knowledge of it. As approved by

the Bureau of Public Instruction, it recommended the discontinuance of the kindergarten department as a matter of good school business administration and instructional efficiency.

Notice of the school board's action was given to appellee on May 31, 1938. An opportunity was given her to be heard and she appeared, through counsel, at the meeting held June 7. No formal charges were filed or heard. A second notice of the board's action was sent appellee, and she was thereafter refused reëmployment. On hearing de novo in the court of common pleas the board's action was reversed and she was ordered reinstated. The reason given by the court below was that she had been dismissed because she was a nonresident. There is no evidence to support this conclusion, nor, on the other hand, does the record show the report of the Department of Public Instruction, though apparently the board based its action upon it. Because of this insufficiency, we will remand the record for further hearing, but in so doing, as it was argued that the board's action was based on the departmental recommendation, we will state our views on the issues raised.

Appellant contends that the school board has power to discontinue the kindergarten department, and that when it does so a teacher performing therein may be suspended, unless there is some other place in which the board can advantageously use her. The teacher's position is that, though the board may discontinue the department, she must receive a contract from the board and be paid her salary indefinitely though there is no other place for her, or scholars for her to teach. Appellee bases her contention on the Tenure Act, asserting that she cannot be dismissed because of the abandonment of a department, but only for the causes mentioned in that Act.

The question raised is a most serious one and affects the life of our educational system. To hold as appellee contends would place an unbearable burden throughout

the State upon taxpayers already overburdened, but if the legislature has so commanded, and by so doing has set up a class of employees privileged beyond any other class, it is not for the courts to determine the wisdom of such policy. The Constitution has placed the educational system in the hands of the legislature, free from any interference from the judiciary save as required by constitutional limitations. We may only, in problems such as this, ascertain the legislative intent.

To answer the questions propounded it will be necessary to construe certain sections of the School Code of 1911,[1] as amended, and determine whether there is a collision between them and the provisions of the Tenure Act. In doing so, we must keep in mind the underlying purpose of the Tenure Act, and inquire whether it was intended to apply to a situation such as is here presented. As we said in *Walker's Appeal*, 332 Pa. 488: "The fundamental public policy, expressed in the Constitution and underlying school laws, is to obtain a better education for the children of the Commonwealth." The separate sections of the School Code all derive their inspiration from this source. Though containing individual policies in themselves, each is subordinate to this cardinal purpose. Where a statute amends part of a general code so that its apparent effect is to materially modify, partially destroy, or interfere with the general purposes of the code by conflict with other sections, the amendment should be strictly construed and made to conform to the general purposes unless the legislative intent is clearly and specifically otherwise. It should not be given the drastic effect of destruction by indirection.

By the School Code, the school directors are given power to administer the public school system;[2] they are

---

[1] Act of May 18, 1911, P. L. 309.

[2] Section 201 (as amended by the Act of June 1, 1933, P. L. 1152, section 16); section 404 (as amended by the Act of May 29, 1931, P. L. 243 section 9).

commanded to employ the necessary qualified teachers to conduct school affairs and keep the schools open.[3]  If they fail to do this, upon proper complaint the Superintendent of Public Instruction will withhold from the district its share of the State's appropriation until the necessary qualified teachers are employed.[4]  School directors have power to assign teachers to any of the various fields in which they are certified.[5]

The Code specifically requires certain courses of study to be maintained by the school directors.[6]  Other subjects may be designated by the board if approved by the State Council of Education.[7]  The boards may, in addition, establish supplementary departments, of which the kindergarten is one.[8]  There is no compulsion upon the board to establish a kindergarten or any other supplementary or auxiliary department, nor is there any compulsion on it to continue such kindergarten, and it must be discontinued if the average student attendance falls below ten for the school year.[9]  The branches prescribed by the legislature must, however, be taught, whether through separate departments or not; these are basic and fundamental to our educational system.  The teaching of any of these branches cannot be discontinued either by the State Council of Education or the school

---

[3] Section 1201 (as amended by section 1 of the Tenure Act).

[4] Section 1150.

[5] *Ganaposki's Case*, 332 Pa. 550.

[6] Sections 1607 (as last amended by section 1 of the Act of May 20, 1937, P. L. 732); 1608, 1701 (as last amended by the Act of April 7, 1925, P. L. 166, section 1); 1704 (as amended by the Act of May 20, 1921, P. L. 1036, section 2); and 1712.

[7] See footnote 6.

[8] Section 401 (as last amended by Act of May 29, 1931, P. L. 243, section 8).

[9] Section 401, as amended, provides: "If the average attendance in any one kindergarten in any district is ten or less for the school year, the school directors shall, at the close of the school year, discontinue the same."

board. But the discontinuance of a supplementary department that legally is abandoned, is purely a matter of discretion, and the court will not review that discretion unless grossly abused. Public school policies are left to the discretion of the administrative bodies to meet changing times and educational concepts. The administrative function is to control, change and correct the courses of study. See *Wilson et ux. v. Phila. School District et al.*, 328 Pa. 225, 236.

To sustain appellee's contention that a teacher whose department has been discontinued must be retained, and the board compelled to pay her while she is idle, would seriously handicap our educational policies. Many new fields of experimentation have been launched by our school authorities. Some have been found unsuccessful in accomplishing their purpose, and if appellee's position is upheld, no school board would risk the establishment of any new department, which in the event of failure must be continued or its idle teachers paid.

As we have stated before,[10] the purpose of the Tenure Act was to maintain an adequate and competent teaching staff, free from political and personal arbitrary interference, whereby capable and competent teachers might feel secure and more efficiently perform their duty of instruction, but it was not the intention of the legislature to confer any special privileges or immunities upon professional employees to retain permanently their position and pay regardless of a place to work and pupils to be taught; nor was it the intention of the legislature to have the Tenure Act interfere with the control of school policy and the courses of study selected by the administrative bodies; nor was it the intention of the legislature to disrupt a school district's financial scheme, which must be operated upon a budget limited by the Code, that cannot be exceeded except in the manner pro-

---

[10] *Teachers' Tenure Act Cases*, 329 Pa. 213, 231; *Walker's Appeal*, 332 Pa. 488.

vided by the legislature.[11]   If the teacher must be retained in the circumstances before us, the discretion of the board over its educational policies would be largely eliminated.

Appellant urges that, to sustain the court below, we would be compelled to modify or override other sections of the Code and Tenure Act itself, which, it is contended, conflict with the dismissal section.

The Constitution, Article X, section 1, directs the General Assembly to "provide for the maintenance and support of a thorough and *efficient* system of public schools." The legislature is thus empowered to determine what is "efficient" in school management.   The Code must be construed in the light of this constitutional command. Section 1201 of the Code, as amended, reads: "The board of school directors in every school district . . . *shall* employ the *necessary* qualified teachers to keep the public schools open in their respective districts in compliance with the provisions of this act."   It must be assumed that the legislature had this constitutional provision in mind when it used the words "shall employ the necessary qualified teachers."   Both "shall" and "necessary" are mandatory words; "necessary" must be given its plain meaning and should not be construed to mean "unnecessary."   "Efficient" has reference not only to the qualifications of the teacher, but relates to other basic matters associated with the school system.   There are many factors that enter into the meaning of the word "necessary," as we said in *Wilson v. School Dist. of Phila.,* 328 Pa. 225, 236.   What would be "necessary" under this provision is a matter within the administrative discretion of the board to a large extent.   Thus, the board has discretion to add supplementary departments, and by so doing to create a necessity for more teachers.

---

[11] Section 563, as last amended by the Act of May 13, 1937, P. L. 605, section 3; section 567, as supplied by the Act of May 29, 1931, P. L. 243, section 14.

The uncertainty of the school tax rate comes from the uncertainty of the amount that is required to pay the teaching staff of each district, which may be increased without outside interference, and may be decreased within the limitations of the Act.

If the legislature intended teachers to be employed, or retained, who are rendered unnecessary by the abolition of a department, in order to preserve the continuity and efficiency of the school system as a whole, it should have set forth such intention specifically in dealing with a subject as important as the one before us.

The legislature knew perfectly well in analogous situations how to express the intent appellee attempts to read into the Act. Section 1206 of the Code, as amended, provides that when schools are closed because of contagious diseases, fires, or other causes, the teachers must be paid during the interim according to their contracts, though they may remain idle at their homes. The body of teachers is kept together during a temporary emergency, and in these circumstances there is justification for paying them; it makes for a more "efficient public school system." The legislature also knew how to express its purpose when there is a natural decrease in student population, and provided that in such case there could be a suspension of teachers in the inverse order of appointment. Had it been intended that the Tenure Act should apply to the present situation, it would be reasonable to expect a similar provision.

Appellee lays great stress on the fact that the abandonment of a department is not within the causes for dismissal contained in Section 1205(a) of the Act. If this section forbids the suspension of teachers rendered unnecessary by the discontinuance of the department, the establishment of which created the necessity, it is in conflict with Section 1201 which compels the board to employ the *necessary* qualified teachers. Appellee's argument places too great emphasis upon the dismissal

feature, and does not take into consideration the other provisions of the Tenure Act, the Code as a whole, and the Constitution. It ignores the effect of our decision in *Walker's Appeal*, where, with reference to the question then before us, we held that the limitations in Section 1205(a) were opposed not only to the general purpose of the Code, but were also opposed to other sections which had for their object the advancement of the educational system through the joint consolidation of schools; that the dismissal and suspension features mentioned would not support the right of the teachers there to an indefinite contract. The legal abandonment of a department of education that releases a teacher, presents no difference in its essential effect from the consolidation of schools; both have as their object a better educational system at a lower expense.

Appellants do not contend that the board is required to employ only those teachers who are absolutely necessary "to keep the schools open." One teacher, teaching eighty pupils might keep a school open, but this would not be an efficient system because it would not permit the individual scholar to be trained as the State desires him to be. Undoubtedly years ago it was thought a single teacher could instruct that number of pupils, but today it has been decided, as a matter of educational policy, that this cannot be done.

Much discussion has been based upon the thought that the school board may not reduce its teaching staff for financial reasons. As stated at argument, the district had difficulty in paying its staff out of its present collectible revenue, considering other necessary expenses. It was necessary to secure additional State aid to defray all expenses. When an entire department is lawfully abolished for valid reasons, which may include financial ones, in the interest of a more efficient system, the teachers in that department can be dismissed. Economy is desirable in any governmental function, and we

cannot so view the present legislation as to prevent the abolition of a department for this purpose.

Finally, appellee insists that if teachers may be suspended upon the abolition of their department, the suspension must be in the manner provided by Section 1205(b) in the inverse order of appointment. The legislature having specifically restricted the consideration of seniority to suspensions for natural decrease in pupil population, it would be beyond the province of this Court to hold the same rule, however desirable, to apply to suspensions for other reasons. If the safeguards of Section 1205(b) are to be extended to a situation like the present because of public policy, the legislature must so declare.[12] Of course, a department may not be abolished merely to circumvent the provisions of the Act and to accomplish the dismissal of a teacher for political or arbitrary reasons by unlawful subterfuge. See *Essinger v. New Castle,* 275 Pa. 408, 410; *State ex rel. Karnes v. Board of Regents,* 222 Wis. 542, 269 N. W. 284.

The court below was in error in ordering the reinstatement of appellee because the testimony was insufficient to sustain the finding that appellee was dismissed solely for nonresidence. The record, however, is not clear as to the board's reason for its action in abolishing the department, and it is returned with the report of the Department of Public Instruction, which was before this Court on stipulation, for further hearing.

Decree reversed; record remitted for further hearing.

---

[12] It was expressly held in *Unruh v. Piedmont High School Dist. et al.,* 4 Cal. App. (2d) 390, 41 P. (2d) 212, that the statutory provision for dismissal in inverse order upon a decrease in attendance, is not carried over, by analogy, to dismissal due to another statutory ground ("the discontinuance of a particular kind of service"), since that statutory ground is not specifically accompanied by the inverse order requirement.